# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-321-RJC-DCK

| | |
|---|---|
| PAUL KEELEY, | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| SYNAGRO TECHNOLOGIES, INC., | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion To Strike Plaintiff's Third Amended Complaint, Or, In The Alternative To Dismiss Counts 1-3 Of Plaintiff's Third Amended Complaint" (Document No. 19), filed November 3, 2021. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied.

## I. BACKGROUND

Plaintiff Paul Keeley ("Plaintiff" or "Keeley") initiated this action with the filing of a "Complaint" in Mecklenburg County Superior Court on June 2, 2021 against Defendant Synagro Technologies, Inc. ("Defendant" or "Synagro"). See (Document No. 1-1). Defendant then removed the case to the Western District of North Carolina on July 6, 2021 with the filing of "Defendant's Notice Of Removal To Federal Court." See (Document No. 1).

The procedural history of this case has been complicated by Plaintiff's filing of multiple motions to amend. On November 9, 2021, Plaintiff filed a "…Motion For Leave To File An Amended Complaint" (Document No. 11), one day after a response to Defendant's "…Partial

Motion To Dismiss" (Document No. 6) was due. Then, after Defendant responded to Plaintiff's first motion to amend, Plaintiff filed *another* motion to amend on September 30, 2021, entitled "Plaintiff's Motion For Leave To File Second Amended Complaint" (Document No. 14). Plaintiff included a proposed "Second Amended Complaint" as an exhibit to his second motion to amend. See (Document No. 14-1). On October 18, 2021, the Court granted "Plaintiff's Motion For Leave To File Second Amended Complaint" (Document No. 14), stating "the undersigned will allow Plaintiff to file an Amended Complaint which supersedes the original Complaint…Plaintiff is respectfully directed to consider Defendant's objections, and then file an Amended Complaint." (Document No. 17, pp. 2-3).

On October 20, 2021, Plaintiff filed his "Amended Complaint" ("Amended Complaint") (Document No. 18). Defendant's instant motion followed, the first part of which argues that Plaintiff's Amended Complaint contains a new claim against Defendant that was not included in the proposed "Second Amended Complaint" (Document No. 14-1) attached to "Plaintiff's Motion For Leave To File Second Amended Complaint" (Document No. 14) – in contravention, Defendant argues, of both Federal Rule of Civil Procedure 15 and the Court's October 18, 2021 Order. See (Document No. 19).

At a high level, Plaintiff contends that he was wrongfully terminated "in retaliation for" reporting various "misrepresentations made to him by his supervisors…and a myriad of other health and safety risks and violations of North Carolina and federal law attributable to Defendant." (Document No. 18, p. 1). Plaintiff alleges that "Defendant collects biosolids created by the treatment of wastewater at municipal and industrial plants throughout North America." Id. at p. 2. Allegedly, Plaintiff worked for Defendant "as a driver/operator" from approximately October 2016 through the date of his termination on June 3, 2020. Id. at pp. 2, 6.

2

According to the Amended Complaint, "[i]n his role as an operator, Mr. Keeley's job was to spread biosolids and treat[] human wastewater as instructed by Defendant in accordance with state and federal environmental laws." Id. at p. 2. During the course of Plaintiff's employment, he contends that he allegedly "witnessed, documented, and reported" to Defendant "[m]ultiple serious health and safety risks" in violation of state law, "[m]ultiple violations of state and federal environmental laws by Synagro resulting from Defendant's failure to repair and maintain its equipment, including equipment used to collect biosolids and clean out sewage lagoons," "[m]ultiple instances of Synagro managers, including Defendant's Operations Manager, Wayne Brady…directing employees to improperly dispose of waste," and "[m]ultiple instances of Synagro Managers…instructing Synagro employees to misrepresent on applicable paperwork and reports the actual amount of waste that had been disposed." Id. at pp. 2-3.

Regarding the specific circumstances that allegedly ultimately led to Plaintiff's discharge, Plaintiff contends that he "was scheduled to work on a wastewater removal project at the Lees Duke Water Plant [] in Charlotte, North Carolina." Id. at p. 4. Apparently, "[t]he wastewater was to be removed by use of a Houle pump." Id. According to Plaintiff, the pump had numerous past problems and repairs, resulting in Plaintiff "previously invok[ing] stop work orders," for which Synagro's company policy permitted. Id. Because of the past problems with the pump, Plaintiff allegedly went to his supervisor, Mr. Brady, on May 22, 2020 to ask "if the Houle pump had been repaired and was safe and ready to use." Id. "In response, both Brady and Meade [another supervisor] told Mr. Keeley that the Houle pump had been properly repaired, greased and serviced, and was safe to use." Id. Shortly thereafter, "[r]elying on [his supervisors'] representations, Mr. Keeley [allegedly] started operating the Houle pump when he arrived" at the water treatment plant, at which time the pump "began leaking, resulting in a spill." Id. at p. 5. Plaintiff then apparently

3

"reported [his supervisors'] misrepresentations [about the pump having been repaired and in safe condition]," and he also reported "the myriad of other health and safety risks and violations of law attributable to Defendant that he had witnessed, documented, and previously reported." Id. at pp. 5-6.

Following his report, "[o]n May 23, 2020, Brady sent Mr. Keeley a text message informing him that Defendant was placing him 'on leave pending investigation.'" Id. at p. 6. Then, "[o]n or about June 3, 2020, Defendant summarily terminated Plaintiff's employment, purporting that his dismissal was due to a failure to follow company policy in regard to the spill at [the wastewater treatment plant] caused by the malfunctioning Houle pump." Id.

Plaintiff's Amended Complaint alleges four claims against Defendant: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) negligent supervision or retention; and (4) wrongful discharge in violation of public policy. Id. at pp. 7-9.

"Defendant's Motion To Strike Plaintiff's Third Amended Complaint, Or, In The Alternative To Dismiss Counts 1-3 Of Plaintiff's Third Amended Complaint" (Document No. 19) was filed November 3, 2021. Plaintiff's "Response To Defendant's Motion To Strike Plaintiff's Amended Complaint, Or, In The Alternative To Dismiss Counts 1-3 Of Plaintiff's Amended Complaint" (Document No. 20) was filed November 17, 2021. "Defendant's Reply Memorandum In Support Of Its Motion To Strike Plaintiff's Third Amended Complaint, Or, In The Alternative, To Dismiss Counts 1-3 Of Plaintiff's Third Amended Complaint" (Document No. 23) was filed December 1, 2021.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint

in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

**Motion to Strike Pursuant to Rule 15 and Rule 12(f)**

By the instant motion, Defendant argues that "Plaintiff, in not filing the Second Amended Complaint, violated Rule 15(a)(2) and this Court's Order [] allowing him to file the Second Amended Complaint." (Document No. 19-1, p. 7). Defendant describes how Plaintiff, rather than file the proposed amended complaint attached to Plaintiff's second motion to amend, instead filed a different amended complaint – what Defendant refers to as the "Third Amended Complaint." Id. at pp. 1-2. Defendant contends that "[i]n the Third Amended Complaint, not only did Plaintiff make multiple changes to the allegations contained in the Second Amended Complaint…but Plaintiff also asserted…a wholly new claim [not contained in the previous proposed amendments] for Negligent Supervision [and] Retention." Id. at p. 3. Essentially, Defendant argues that neither it nor the Court had the opportunity to consider the proposed amendment that was ultimately filed. Defendant thus asserts that the Amended Complaint "should be stricken for Plaintiff's failure to comply with Rule 15 by not filing a motion to amend the Original Complaint to include" the new claim "and the changes to the allegations." Id. at p. 5.

The undersigned respectfully recommends that the Amended Complaint <u>not</u> be stricken. Indeed, by its plain wording, the Court's October 18, 2021 Order did not place any restriction on Plaintiff filing the precise document that it attached to its motion to amend. In fact, the Order even *encouraged* Plaintiff to be mindful of and to "consider Defendant's objections, and then file an Amended Complaint." (Document No. 17, pp. 2-3). In that regard, the undersigned respectfully recommends that Defendant's argument that Plaintiff's Amended Complaint be stricken for failure

6

to comply with both Rule 15 and the Court's order granting Plaintiff's motion to amend be denied. There is simply no prejudice to the Defendant where Plaintiff filed an amended complaint that differed slightly from the version it proposed and attached to its motion to amend, especially because no discovery has occurred, a scheduling order has not been answered, and this case is still in its early stages. See Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006) ("[a]n amendment is not prejudicial…if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred").

**Motion to Dismiss Claims 1-3 under Rule 12(b)(6)**

Defendant moves in the alternative to dismiss "[c]ounts 1-3 of Plaintiff's Complaint – namely Plaintiff's claims for Fraudulent Misrepresentation (Count One), Negligent Misrepresentation (Count Two), and Negligent Supervision and Retention (Count Three) on the grounds that they fail [to] state a claim upon which relief can be granted." (Document No. 19-1, pp. 3-4).[1]

  1. **Fraudulent Misrepresentation Claim**

A claim of fraudulent misrepresentation is established where a plaintiff pleads five elements: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injur[ed] party." Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974). Furthermore, fraudulent misrepresentation is an intentional tort. See Young v. Fed. Deposit Ins. Corp., 103 F.3d 1180, 1190 (4th Cir. 1997). "A corporation may be held vicariously liable for such an intentional tort of its [employee] if the [employee] acted within the scope of his or her employment." Id. An employer can also be liable for the intentional tort of its employee where the employee's "act is

---

[1] Notably, Defendant does not move to dismiss Plaintiff's claim for wrongful discharge in violation of public policy on Rule 12(b)(6) grounds.

expressly authorized by the" employer or where the employee's "act is ratified by the" employer. Salley v. Petrolane, Inc., 764 F. Supp. 61, 63 (W.D.N.C. 1991). Furthermore, a successful claim for fraudulent misrepresentation requires that a plaintiff "allege[] detrimental reliance" and plead the various elements "with particularity." Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418, 421 (4th Cir. 1990). The first four elements of a fraudulent misrepresentation claim are not in dispute; therefore, the undersigned's analysis will focus solely on Defendant's two below arguments regarding the vicarious liability issue and detrimental reliance.

Defendant's first argument that the fraudulent misrepresentation claim should fail is that Plaintiff's "allegations do not make it plausible the misrepresentations could be in the furtherance of Synagro's business." (Document No. 19-1, p. 10). Plaintiff contends, on the other hand, that Brady was acting within the scope of his employment by making the misrepresentations about the pump's repair status because Defendant "benefitted…through…reduced company expenses and elimination of a paper trail of potential health and safety issues and violations of law that would otherwise be available to inspectors." (Document No. 18, p. 3). The undersigned finds that whether Brady's misrepresentations were in furtherance of Defendant's business and therefore made within the scope of his employment is a close call. Still, another theory of Defendant's vicarious liability with respect to the misrepresentations is plausible at the motion to dismiss stage – the ratification theory that Plaintiff puts forth.

Indeed, "[t]o establish that an employer ratified a tortious act by an employee, Plaintiff must show that the employer 'had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act.'" Alexander v. Diversified Ace Servs II, AJV, 2014 WL 502496, at *17 (M.D.N.C. Feb. 7, 2014) (quoting Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 122 (N.C. Ct. App. 1986)). Plaintiff

8

argues in its response brief that he "alleges that Defendant had been made aware of Brady's wrongful conduct – including his failure to ensure that machinery and equipment was properly repaired and maintained – on multiple occasions, yet it took no action against Brady to stop him and thus ratified this conduct." (Document No. 20, p. 6). Plaintiff's Amended Complaint alleges that "Defendant had been informed of and was aware of multiple instances of Brady's improper actions described above, including Brady directing the improper disposal of waste and failing to ensure that machinery and equipment was properly repaired and maintained, yet, upon information and belief, it took no action to discipline Brady for his conduct." (Document No. 18, pp. 3-4). Defendant's reply brief makes no argument against this theory of Defendant's liability for fraudulent misrepresentation. See (Document No. 23). Thus, the undersigned finds that Plaintiff's allegations are sufficient on the fraudulent misrepresentation claim such that Defendant could ultimately be held vicariously liable for Brady's statements, although no determination is made at this point.

Defendant's second argument for why Plaintiff's fraudulent misrepresentation claim should fail under Rule 12(b)(6) is that his allegations on this claim have "failed to hurdle the requirement of detrimental reliance." (Document No. 19-1, p. 10). Defendant contends that Plaintiff's allegations state that "his discharge (and related damages) resulted [] not from any alleged misrepresentation…[but from the] reporting [of] the misrepresentations to Synagro management" and the resulting retaliatory discharge." Id. at p. 11. The undersigned finds this argument unpersuasive. Indeed, as Plaintiff states, "but for the false representation [about the pump's condition], Plaintiff would not have operated the Houle pump, the spill would not have occurred, and Defendant would have had no claimed basis on which to terminate Plaintiff's employment." (Document No. 20, p. 5). Therefore, but for Plaintiff's reliance on Brady's statements about the

9

pump having been in good working condition, he would not have been discharged because no violation of company policy would have occurred (the claimed basis upon which Defendant terminated Keeley). The undersigned therefore respectfully recommends that Defendant's motion to dismiss Plaintiff's fraudulent misrepresentation claim be denied.

### 2. Negligent Misrepresentation Claim

"The tort of negligent misrepresentation occurs when [(1)] a party justifiably relies [(2)] to his detriment [(3)] on information prepared without reasonable care [(4)] by one who owed the relying party a duty of care." Sullivan v. Mebane Packaging Grp., Inc., 581 S.E.2d 452, 462 (N.C. Ct. App. 2003) (internal quotations and citations omitted). Only the first two elements are disputed; therefore, the undersigned will focus the analysis on those elements.

Defendant's argument on Plaintiff's negligent misrepresentation claim mirrors that of the argument on detrimental reliance with respect to the fraudulent misrepresentation claim. See (Document No. 19-1, p. 12). For the reasons stated in the above section regarding why the undersigned concludes that Plaintiff *has* sufficiently alleged detrimental reliance to survive a motion to dismiss, the undersigned respectfully disagrees with Defendant. See supra pp. 9-10. Thus, the undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim be denied.[2]

### 3. Negligent Supervision or Retention Claim

A claim for negligent retention exists in North Carolina when a plaintiff alleges the following elements: "(1) the specific negligent act on which the action is founded;" "(2) incompetency, by

---

[2] At this stage, since it is plausible that Brady and Meade's conduct could have been either intentional or negligent, as Plaintiff pleads, both fraudulent and negligent misrepresentation are properly pled. See Accretive Commerce, Inc. v. Kenco Grp., Inc., 3:07-CV-285-W, 2008 WL 413856, at *11-*12 (W.D.N.C. Feb. 13, 2008) (denying a motion to dismiss both fraudulent and negligent misrepresentation claims). Discovery will determine whether one or neither of the misrepresentation claims succeeds.

10

inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred;" (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in oversight and supervision;" and "(4) that the injury complained of resulted from the incompetency proved." Medlin v. Bass, 398 S.E.2d 460, 462 (N.C. 1990) (internal quotations and citations omitted).

Defendant makes two arguments in support of its contention that Plaintiff's negligent supervision and retention claim should fail: (1) that the claim "can be barred by the North Carolina Workers' Compensation Act;" and (2) that Plaintiff is alleging that his damages arose from the retaliation against him for reporting the various misrepresentations and violations of law rather than from "any form of incompetence," which is necessary to state a negligent supervision or retention claim.[3] (Document No. 19-1, pp. 13-14).

Defendant's argument that Plaintiff's negligent supervision and retention claim could be barred by the North Carolina Workers' Compensation Act ("NCWCA") is simply misguided. The NCWCA pertains to physical injuries in the workplace. See Pleasant v. Johnson, 325 S.E.2d 244, 247 (N.C. 1985). Here, "Plaintiff is complaining of [his] discharge from employment, not any 'injury' incurred while working." Moore v. Time Warner Cable, Inc., 3:09-CV-3-V, 2009 WL 3754225, at *5 (W.D.N.C. Nov. 5, 2009) (citing N.C. Gen. Stat. § 97-2(6)). As in Moore, "Plaintiff's Complaint [in this case] does not assert either an accident or any injury, and thus, the [NCWCA] is wholly inapplicable to the facts in this case." Id.

---

[3] Defendant makes another argument that "there is no tort claim to 'underly' the Negligent Supervision and Retention claim," and therefore "the claim must be dismissed for this reason as well." (Document No. 19-1, p. 13). Since the undersigned respectfully recommends that the other tort claims survive, there is no need to address this argument.

Regarding Defendant's argument that Plaintiff's damages resulted not from any incompetence but rather from the retaliation that he allegedly experienced, the undersigned respectfully finds this point unpersuasive. Indeed, as Plaintiff points out, he alleges facts that plausibly support each of the four elements of a negligent retention claim. See (Document No. 18, pp. 3-4, 8-9). First, "Plaintiff alleged negligence against Brady and Meade for their misrepresentations." (Document No. 20, p. 7). Second and third, Plaintiff alleged that "Defendant had received multiple prior [reports] of similar conduct in the past, yet it did nothing to correct this behavior or prevent it from occurring in the future." Id. And finally, regarding the fourth element of a negligent retention claim, it is at least plausible at this stage – before the benefit of discovery – that Plaintiff's discharge resulted from the incompetency of Plaintiff's supervisors – specifically, their misrepresentations. As Plaintiff points out, "had Brady and Meade not made their negligent misrepresentations, then Plaintiff would not have operate[d] the Houle pump, the spill would not have occurred, and Defendant would have had no basis on which to terminate Plaintiff's employment." Id. The undersigned thus respectfully recommends that Defendant's motion to dismiss Plaintiff's negligent retention claim be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant's Motion To Strike Plaintiff's Third Amended Complaint, Or, In The Alternative To Dismiss Counts 1-3 Of Plaintiff's Third Amended Complaint" (Document No. 19) be **DENIED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days**

of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005);  United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: November 16, 2022

David C. Keesler
United States Magistrate Judge